Filed 9/8/16  In re D.H. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re D.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.H.,<br><br>Defendant and Appellant. | F073017<br><br>(Fresno Super. Ct. No. 15CEJ600730-1)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Thomas W. Casa, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Peña, J.

## INTRODUCTION

Defendant/appellant D.H., a juvenile, was found to have been an aider and abettor of second degree robbery (Pen. Code, §211) and placed on probation subject to various terms and conditions. On appeal, his appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We affirm.

## FACTS

Around 11:30 a.m. on November 20, 2015, 24-year-old Joseph Briones (Briones) was walking on Cedar Avenue between Clinton and McKinley in Fresno. He had a headphone in one ear and he was listening to music on his iPhone. Briones testified two males ran up behind him, grabbed him, and punched his head and jaw. Briones felt them try to take his iPhone, and heard one male say, " '[G]ive me all your money.' "

Briones fell to the ground and lost consciousness. When he woke up, Briones realized his iPhone and wallet had been taken. He suffered a bump, cuts, and bleeding on his forehead and the right side of his head, and he was taken to the hospital for treatment. Briones was unable to identify anyone because the assailants attacked him from behind.

Several law enforcement units responded to the area. There were two witnesses who observed the incident. Deputy Talent interviewed Tommy Puentes (Puentes), who said that he was standing outside his house, and saw two men behind Briones. The men ran up to Briones and attacked him from behind. Briones fell to the ground. Puentes said four more men ran up to the victim. Puentes said he ran into his house and called 911, and did not see what the other four men did. Puentes said he returned outside after he called 911, and the suspects were gone. Puentes gave a basic description of two men to Deputy Talent.

Joni Nickles was driving her vehicle on Cedar Avenue and also saw the incident. She reported that two males ran behind Briones and attacked him. Nickles reported

2.

another group of four males were also involved. Nickles testified that everyone in the group was "pretty much all swinging" at the victim and he fell down. Nickles kept driving, turned around, and drove back to the scene, but the group was gone.

At 11:44 a.m., Detective Swain saw appellant walking on the canal bank parallel to McKinley Avenue. Appellant matched the description of one of the robbery suspects. Swain drew his service revolver and ordered appellant to stop. Appellant immediately complied, and he was handcuffed and taken into custody. Appellant was sweating profusely.

Detective Swain asked appellant for his name and date of birth. Appellant was 17 years old. When Swain realized appellant was a juvenile, he immediately advised appellant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). He asked appellant if he understood his rights and appellant said yes. Swain placed appellant in a patrol car but he did not question him.

Other officers detained 15-year-old X.M. in the area. X.M. was sweaty, his shirt was torn, and he had some scrapes. X.M. was advised of the *Miranda* warnings and agreed to answer questions. X.M. said he was walking with some friends, and they were talking about "whacking" someone because they were hungry and needed money. X.M. said two people in the group skipped ahead of them and "jumped" the victim. Someone took the victim's cellphone. X.M. said he stayed back and never hit the victim. X.M. said he got scared and ran away.

**Identifications of appellant and X.M.**

The officers separately escorted Puentes and Nickles to look at appellant and X.M. during infield show-ups at two different locations.

Nickles identified appellant and X.M., and said they were part of the group that attacked Briones. Nickles said she did not see appellant or X.M. actually assault the victim.

3.

Puentes also identified appellant and X.M., and said they were in the group that attacked Briones. Puentes said he did not see appellant or X.M. actually assault Briones.[1]

**Appellant's statement**

Around 1:00 p.m., Detective Razo responded to the location where appellant had been detained in Detective Swain's patrol car. Razo advised appellant of the *Miranda* warnings, and appellant said he understood his rights. Razo then activated his tape-recorder and interviewed appellant.[2]

Detective Razo asked appellant what happened. Appellant said he was with a group of guys; they wanted to get something to eat, but they did not have any money. The other guys saw someone walking with a cellphone and decided to take it. Appellant told the others that he did not want to do it, but they gave him a hard time, and told him to be the lookout. Appellant said he acted as the lookout, and the others beat up the man and took his cellphone. Appellant said he felt bad when he heard the man scream real loud. Appellant saw someone in a car watching them, so he ran away and jumped fences until he was stopped on the canal bank. Appellant gave Razo the names of two people who were part of the group.[3]

---

[1] At the jurisdictional hearing, Puentes testified he did not want to appear in this case, and he only came to court because the district attorney was going to issue a warrant if he failed to do so. Puentes testified he saw two guys behind the victim, but he also testified he saw six "kids" jump someone. Puentes testified he did not remember what else happened, and insisted he never identified anyone that day.

[2] At the jurisdictional hearing, Detective Razo testified he failed to activate his tape recorder when he advised appellant of the *Miranda* warnings. Appellant moved to exclude his statements to Razo and argued there was no evidence he was advised of the *Miranda* warnings. The court denied the motion based on testimony from Detectives Swain and Razo that they both advised appellant of the *Miranda* warnings.

[3] While appellant gave the names of two other individuals, Detective Razo testified he did not conduct a follow-up investigation and no other suspects were detained or arrested in this case.

**<u>Procedural history</u>**

On November 24, 2015, a juvenile wardship petition (Welf. & Inst. Code, § 602) was filed in the Superior Court of Fresno County, which alleged appellant violated Penal Code section 211, second degree robbery. The People determined appellant was not eligible for deferred entry of judgment.

A separate juvenile petition was filed as to X.M., which also alleged that he committed second degree robbery. The cases were consolidated.

On December 17 and 18, 2015, the court conducted a joint contested jurisdictional hearing for both appellant and X.M. The court found the allegations true as to both appellant and X.M., and that they had aided and abetted the robbery. The court stated:

"[T]here was essentially a pack of young men who were seen as working together from a point of walking down the street together to the reestablishment of the pack after the two people attacked the victim in this case. The statements of [appellant and X.M.] do tend to corroborate the – what is apparent and that is that there was a decision to rob this young man who was walking alone down the street, and that was clearly done before the – the two broke off from the pack to go make the actual attack on – on the young man.

"So what we have is that whatever the precise role of these two young men was they each voluntarily accompanied the others, participated in whatever planning process there was, and they never vacated themselves from the scene of the crime. They never took any steps to assist the victim in the case and in fact fled with them. And it actually it's the flight that ultimately, I think, is the most telling about their liability for this act. If they were not the direct perpetrators of the crime, then their flight in fact aided and abetted the actual perpetrators of the crime because the police chased these guys and whoever the other perpetrators were got away."

On January 5, 2016, the court held the dispositional hearing. The probation officer stated appellant expressed remorse for his conduct, and he displayed good behavior while

in custody. The court also acknowledged appellant had shown remorse for the incident. The court stated appellant had been doing well in school and was probably a "good guy," but he got involved in a foolish incident with the wrong people. The court encouraged appellant to obey the terms of his probation so that it would be terminated in one year. "I think you're a smart guy, you're earnest, you have a big heart, made a terrible choice, but I think you can really do well for yourself if you cut these other so-called friends or acquaintances loose and … don't follow them."

The court adjudged appellant as a ward of the court. The court found the maximum period of confinement was five years. The court gave appellant 47 days of credit in juvenile hall, committed him to the Juvenile Justice Camp for an additional 20 days; placed him on electronic monitoring for 40 days after he was released; and ordered him placed on probation for one year subject to various terms and conditions.

On January 7, 2016, appellant filed a timely notice of appeal.

## DISCUSSION

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on April 20, 2016, we invited appellant to submit additional briefing. To date, he has not done so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.

6.